IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT C. MCDONALD, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:13-cv-552-WKW-TFM |
| | ) | [wo] |
| COTTON STATES MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

# **ORDER**

Pending before the Court are Plaintiffs' *Motion to Compel* (Doc. 30, filed August 20, 2014), and *Motion to Continue Deadlines* (Doc. 45, filed September 17, 2014), and Defendants' *Motion to Compel* (Doc. 34, filed September 3, 2014), and *Motion to Quash* (Doc. 40, filed September 8, 2014). The Court held oral argument on the motions on September 9, 2014 and September 25, 2014. The Complaint alleges that Defendant Cotton States Mutual Insurance Company ("Cotton States" or "Defendant") breached their contract with the Plaintiffs Robert and Lucy McDonald ("the McDonalds" or "Plaintiffs") as well as a class of current and former policyholders ("The Class") by knowingly using a dwelling coverage calculation which exceeds the actual amount necessary to replace the covered homes. *See* Doc. 1-3 at 36-48. The Complaint further alleges that Cotton States used the Residential Component Technology ("RCT") program to calculate the replacement cost of insured homes. *See* Doc. 1-3 at 37. It is alleged that Cotton States

added inflation adjustment into the RCT's calculation for the sole purpose of collecting higher premiums even though they knew or should have known that the actual replacement cost amount was substantially less than the cost output by the RCT.  *See* Doc. 1-3 at 44-45.

## I. DISCUSSION

### A. Plaintiffs' Motion to Compel

On August 20, 2014, the McDonalds filed a *Motion to Compel* (Docs. 30-31) requesting this Court to compel a series of discovery requests.  Specifically, Plaintiffs propounded interrogatories, request for production, and requests for admission requesting detailed information on "every Alabama insured whose replacement coverage value for a residential dwelling was set using RCT," the methodology employed to determine the building costs in Alabama, detailed information on every Alabama insured whose policy included Coverage CC Inflation and Coverage EE inflation, as well as several other various requests for admissions and requests for production.  *See* Doc. 31.

Discovery is not limited to that information which is admissible in court, but rather discoverable information is "relevant information" which "appears reasonably calculated to lead to the discovery of admissible evidence."  FED. R. CIV. P. 26(b)(1).  The Court recognizes its duty to balance production of "relevant information" which is "reasonably calculated to lead to the discovery of admissible evidence" with concerns that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  FED. R. CIV. P. 26(b)(1) and 26(b)(2)(C)(i).

It is important to note that the case is currently in the class certification stage with three separate proposed classes, and the main discovery requests before this Court are purported to further the formation of a class for the case to proceed against Cotton States. For the McDonalds to certify a class in a class action lawsuit, they must prove that as a class representative, they are "part of the class and 'possess the same interest and suffer the same injury' as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011) (citations omitted). Rule 23(a) of the Federal Rules of Civil Procedure provides four requirements that Plaintiffs must meet to ensure that they "are appropriate representatives of the class whose claims they wish to litigate." *Id.* Pursuant to Rule 23(a) the Plaintiffs must effectively "'limit the class claims to those fairly encompassed by the named plaintiff's claims'" by proving "numerosity, commonality, typicality, and adequate representation." *Id.* (citations omitted).

Here, the McDonalds request the "name, last known address, and policy number of each and every Alabama insured:" 1) "whose replacement coverage value for a residential dwelling was set using the RCT during the applicable class period;" 2) "whose policy included COVERAGE CC INFLATION during the applicable class period;" and 3) "whose policy included COVERAGE EE INFLATION during the applicable class period." *See* Doc. 31 at 3-6. The McDonalds allege that Cotton States knowingly used a dwelling coverage calculation which exceeds the actual amount necessary to replace the covered homes, and that the RCT, Coverage CC Inflation and Coverage EE Inflation were used to determine the excessive premiums. The McDonalds believe that as a result of

Cotton States' intentional actions, they and many other Alabama insureds paid excessive premiums.

Cotton States raises multiple objections to the requests. First, Cotton States objects on the grounds that the interrogatories and requests for production are not tailored to the class membership because the requests would include all clients who had the relevant RCT calculation or coverage inflation calculation included or ran during the relevant period whether or not it was used in calculating the clients' finalized insurance premiums.

Next, Cotton States objects to the requests on the grounds that the classes cannot "be reasonably identified and/or contacted, a fact that will be central to the opposition to the class," and it would be unduly burdensome. *See* Doc. 31. The parties have submitted dueling expert reports for *in camera* review related to this issue. Plaintiffs' expert states that he was given a small sample of the image files similar to those in Cotton States' database, and was able extrapolate the information he sought. While Defendant's expert does not disagree that the information requested is available and can be retrieved, he does contend that it cannot be retrieved with any certainty as to its accuracy, and the undertaking will be time and labor intensive resulting in exorbitant expenses for this early stage of the case.

Defendant's expert states that, in essence, the results of any searches run on the stored files will result in over-inclusive and/or under-inclusive results. Searches related directly to narrowing results to those which included an RCT or coverage inflation will return results which include policies which simply had it run, and not necessarily those

policies which actually had the premium set using these methods. Similarly, the search cannot be narrowed down to those accounts with a total loss claim, making the results over-inclusive. In order to narrow the requests in this manner it would require a manual review of each policy. Additionally, due to the fact that many files were manually scanned or faxed and manually assigned a "value" that would be used in the searches, image quality and human error could make the results under-inclusive. These are but a few examples as to why the expert believes the results will not be accurate, and the expert report contains a more detailed analysis than the examples presented here.

Similarly, the expert states that the costs of this undertaking would be high. Basing his calculations on an average page count of two pages per document through five pages per document, the expert estimates the cost to be between $90,000 and $225,000. This is simply the cost of running the optical character recognition system, and does not account for the hourly technician fees, or other costs the parties may occur throughout the process.

Finally, Cotton States objects and states that "these inquiries are irrelevant and beyond the scope of discovery allowed by the Scheduling Order at this pre-certification stage of the case." *See* Doc. 36 at 11. Specifically, Cotton States asserts that "[t]he identification and location of individual class members is only relevant if and when a class has been certified to enable Plaintiffs to send a class notice, and is not necessarily to address the class certification requirements of Rule 23." *Id.* (citing *Dubin & Dubin LLP v. Mayorga*, No. 13-MC-21S, 2013 WL 3989550, at *4 (W.D.N.Y. Aug. 2, 2013); *Walker v.*

*Alta Colleges, Inc.*, No. A-09-CV-894-LY, 2010 WL 2710769, at *8-9 (W.D. Tex. July 6, 2010)).

The Court will first address the issue of whether the information is discoverable prior to discussing issues of expense or accuracy of the results. Discoverable information is "relevant information" which "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). To successfully certify a class at the class certification stage the plaintiff must prove numerosity, commonality, typicality, and adequate representation. The McDonalds argue that their ability to identify and locate potential class members will be a central factor in proving numerosity in their motion for class certification. Cotton States explicitly stated that class members cannot "be reasonably identified and/or contacted, a fact that will be central to the opposition to the class." *See* Doc. 31. The Court is inclined to agree with Cotton States insofar as the names, contact information, and policy numbers are requested for the purpose of notification, this information would not be discoverable prior to class certification. *See Dubin & Dubin LLP*, 2013 WL 3989550, at *4; *Walker*, 2010 WL 2710769, at *8-9. However, Cottons States cites to cases where the plaintiffs explicitly stated that their desire was to use the information to contact or notify potential class members prior to class certification.

If Cotton States' opposition to the motion centered on whether the class members can even be identified and thus the putative class lacks numerosity, and the McDonalds are only seeking this information for the purpose to overcome such a numerosity challenge,

Page **6** of **17**

they would be entitled to the information to overcome their burden.  *See Drossin v. Nat'l Action Fin. Servs., Inc.,* No. 07–61873–CIV, 2008 WL 5381815, at *3 (S.D. Fla. Dec. 19, 2008) (quoting *Oppenheimer Fund v. Sanders,* 437 U.S. 340, 352–53, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)) ("While discovery regarding information necessary to address class certification requirements under Rule 23 Fed.R.Civ.P., falls within the realm of permissible discovery[. . .], the Supreme Court has rejected pre-class certification discovery of identifying information of potential class members when such information is sought merely for the purpose of identifying such individuals for notice of a class action, as opposed to for reasons of discovering information 'relevant to the subject matter involved in the pending action.'").

Here, the McDonalds have made no assertion that they are attempting to notify the potential class members; instead they are trying to overcome Cotton States' opposition as to whether potential class members can even be identified and they can meet the numerosity requirement.  Much like the defendant in *Drossin*, Cotton States claims that the McDonalds cannot determine the size of the potential classes because it is their stance that the potential class members are not identifiable.  *Drossin*, 2008 WL 5381815, *4 ("[H]ere Defendant can provide no information regarding the size of the alleged class, and based on the information provided by Defendant, the Court can discern no way to ascertain numerosity of the alleged class other than to start with a list of potential class members [. . .]").  Under these circumstances, it is clear to this Court that the information the McDonalds seek is discoverable to the extent that they wish to prove that class members

are identifiable and to overcome their burden of proving that they meet the numerosity requirement.

However, while the McDonalds are entitled to discovery which may prove that the potential class members are identifiable and they meet the numerosity requirements, they are not necessarily entitled to the full contact information at this time. Balancing Cotton States concerns over turning over the personal information of their clients prior to class certification, the Court agrees that it is unnecessary at this stage. The McDonalds' position is that they require the information to overcome Cotton States' defense that the potential class members are not identifiable, and that the numerosity requirement cannot be met. At this stage, any personal information on potential class members that is recovered is not required for the McDonalds to support their class certification stage. However, at the present time, the Court is unable to predict the results of the records search. Once the records search has been conducted, if it is proven that the potential class members are identifiable and that the numerosity requirement can be met, and if Cotton States is willing to stipulate to that fact, then this Court will not find it necessary for Cotton States to produce the personal information of the potential class members. However, if the issue remains in contention after the records search is done, Cotton States must turn the information over to the McDonalds. Insofar as the November 16, 2011 protective order may be insufficient to govern the information at issue, the Court grants the parties leave to request a protective order to govern the potential class members' personal information.

Cotton States raises several other concerns this Court must take into consideration prior to compelling the information sought, even though the Court finds it to be discoverable. First, Cotton States argues the request is overly broad and not tailored to the class membership. The McDonalds request identification of all Alabama insureds whose "replacement coverage value for a residential dwelling was set using RCT," as well as those whose policies "included" COVERAGE CC and COVERAGE EE INFLATION during the applicable class period. *See* Doc. 31 at 3-6. Cotton States argues that these requests are overly broad and vague because the McDonalds' claim that "any insured of CSMIC who had an RCT appraisal performed on their dwelling is a potential class member" is faulty because it fails to take into account the fact that just because an appraisal was run, does not mean it was ultimately used in calculating an insured's policy. *See* Doc. 36 at 5-8. Cotton States asserts the same argument regarding the coverage inflation, in that the term "included" does not ultimately mean that the coverage inflation was "applied" as stated in the class definition. *See* Doc 36 at 10-11. The Court agrees with Cotton States. During oral argument, Plaintiffs stipulate that they are willing to limit these requests to accounts that had total loss claims filed during the relevant time period. The Court finds this stipulation resolves Cotton States' objection, and narrows the scope even further than actually requested. Thus, the McDonalds shall be limited to the information on insureds who had total loss claims filed during the relevant time period.

The final concern that the Court must consider is the dueling expert reports submitted for *in camera* review. As previously stated, while the McDonalds' expert

believes he will be able to retrieve this information, Cotton States' expert asserts that the results will be of varying accuracy requiring a subsequent manual review of every policy, and the cost of running the search and labor associated with it will be very high. This Court must balance the fact that the Plaintiffs are entitled to this discoverable information and the requirement that the information is not "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(1) and 26(b)(2)(C)(i).

Determining which of the parties' expert reports are corrrect is not an issue before this Court; that is reserved for the fact finder. That being said, the McDonalds' expert believes he will be able to retrieve this information. The McDonalds are aware of Cotton States' position that the results may be inaccurate and the undertaking will likely be costly, yet they still request the information to support their motion for class certification. While the information is discoverable, balancing the fact that undertaking will be costly and fairly burdensome on Cotton States at this early stage of the proceeding, the McDonalds shall be required to bear the full expense of this undertaking.

A less expensive option, however, may be possible. During oral argument, the McDonalds indicated their willingness to take an initial sampling to test the results. Prior to conducting an all-inclusive records search, the parties shall work together to set a sufficient sampling size and attempt to resolve the issue as to whether the potential class members are identifiable, as well as if the sample results are sufficient to stipulate that the

McDonalds can meet the numerosity requirement. If a sampling does not resolve the issue, the McDonalds may then proceed with the state-wide record search.

The McDonalds also served various other interrogatories, requests for production, and requests for admission. *See* Doc. 31. Although the Chief District Judge only provided fact discovery necessary for class certification, the parties agreed amongst themselves that discovery above and beyond the narrow discovery required for class certification could be conducted. The parties also decided that they would object to such discovery if the question went solely to the merits and had no grounds in class certification related discovery. Here, many questions have been objected to on the grounds that they are irrelevant or beyond the scope of class certification discovery. The Court agrees, the vast majority of the requests such as Board of Director meeting minutes, advertisement materials, and information on Cotton States or their predecessor's decision to use or not use particular software, etc. are more suitable requests after a class has been certified. Although the parties had an agreement amongst themselves, the Court is bound to enforce the Chief District Judge's scheduling order limiting fact discovery to what is necessary for class certification. *See* Doc. 27. However, Cotton States shall respond to the Third Request for Production #6. The McDonalds admitted they made a typographical error and corrected it.[1] Considering that was the sole basis for Cotton States objection and they

---

[1] Plaintiffs accidentally duplicated a question regarding information on Coverage CC Inflation, and responded that the second instance of the question was supposed to request similar information on Coverage EE Inflation. *See* Doc. 31 at 10.

answered the mirror question with relation to Coverage CC, the Court concludes Cotton States' objection is unavailing.

### B. Defendant's Motion to Quash

On September 8, 2014, Cotton States filed *Motion to Quash* (Doc. 40) requesting this Court to quash the McDonalds' third party subpoena as untimely, as well as for other reasons. Cotton States argues that this case has had three discovery deadlines following two extension requests being granted. The final discovery deadline was August 22, 2014. *See* Doc. 29. However, on August 29, 2014, a week past the discovery deadline, the McDonalds served a, purportedly, Rule 45 Subpoena on non-party Marshall & Swift/Boeckh seeking production of three demands. *See* Doc. 40 at 1, 6-7. The subpoena seeks documents which, by their nature, are otherwise discoverable under Rule 34. Cotton States argues that the McDonalds "expressly disregarded the discovery deadlines in this matter by issuing the Subpoena after the deadline and without seeking leave of the Court." *See* Doc. 40 at 4.

During oral argument, the Court asked the McDonalds to address the timeliness issue and they stated that they believe that pursuant to Rules 34 and 45 of the Federal Rules of Civil Procedure, non-party subpoenas are not subject to the discovery cutoff. The McDonalds cite to Rule 34(c) which states:

> Rule 34. Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes.

> (c) Persons Not Parties. This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land.

Fed. R. Civ. P. 34(c). More specifically, the McDonalds point to the Notes of Advisory Committee to the 1970 amendment of Rule 34(c) which states:

> *Subdivision (c)*. **Rule 34 as revised continues to apply only to parties.** Comments from the bar make clear that in the preparation of cases for trial it is occasionally necessary to enter land or inspect large tangible things in the possession of a person not a party, and that some courts have dismissed independent actions in the nature of bills in equity for such discovery on the ground that Rule 34 is preemptive. While an ideal solution to this problem is to provide for discovery against persons not parties in Rule 34, both the jurisdictional and procedural problems are very complex. For the present, this subdivision makes clear that Rule 34 does not preclude independent actions for discovery against persons not parties.

48 F.R.D. 487, 527 (1969) (emphasis added). The McDonalds construe this language to mean that non-party subpoenas are not subject to the discovery deadline.

The Court disagrees with the McDonalds' interpretation of Rule 34(c) and its accompanying Notes of Advisory Committee. The Northern District of Georgia has already provided an excellent overview of Notes of Advisory Committee to the 1970 amendment of Rule 34(c):

> It is clear from the text of the Advisory Committee Note that subdivision (c) was added to the Federal Rules to fill a specific void in the Rules. That is, it was designed to cover situations in which a party desires to enter on land that is not in the possession or control of a party or to inspect things that it is physically impossible to produce at the taking of a deposition, for example, a mine that is the site of a cave-in, or a large machine that is the source of an injury. *See*, 4 A J. Moore, Moore's Federal Practice P 34.22 at 34-116 (2d ed. 1980) (hereinafter cited as Moore); 8 C. Wright & A. Miller, Federal Practice and Procedure s 2209 at 618-619 (1970) (hereinafter cited as Wright & Miller); Note, "Rule 34(c) and Discovery of Nonparty Land," 85 Yale L.J.

> 112 (1975) (hereinafter cited as "Rule 34c"). As the Advisory Committee Note states, some courts had dismissed independent discovery actions in the nature of equitable bills of discovery for inspection of non-party land on the grounds that enactment of the Federal Rules of Civil Procedure preempted any previously existing discovery devices, such as the bill in equity for discovery. The Advisory Committee in response added Rule 34(c), which simply makes it clear that such independent actions are not precluded. *See*, "Rule 34(c)," supra at 114. In so doing, it specifically rejected the extension of Rule 34 to cover non-parties for the time being on the grounds that the jurisdictional and procedural problems posed by such an extension were too complex. *See*, 4A Moore, supra; 8 Wright & Miller, supra.

*Home Ins. Co. v. First Nat. Bank of Rome*, 89 F.R.D. 485, 486-87 (N.D. Ga. 1980). This Court is unable to draw any interpretation that might aid the McDonalds' argument that the Notes of Advisory Committee to the 1970 amendment of Rule 34(c) somehow state Rule 45 subpoenas issued to non-parties are exempt from the discovery deadline.

The majority of jurisdictions, as well as courts within this Circuit, have considered Rule 45 subpoenas issued to both parties and non-parties alike to constitute discovery, and thus, are subject to the discovery deadline.[2] Additionally, the comments to Rule 45 make it clear that the scope of a subpoena is the same as that applicable to Rule 34 as well as

---

2 *See, e.g., Abrams v. Ciba Specialty Chems. Corp.,* 265 F.R.D. 585, 588 (S.D.Ala.2010); *Circle Grp., L.L.C. v. Se. Carpenters Reg'l Council*, 836 F. Supp. 2d 1327, 1351 (N.D. Ga. 2011); *Mortg. Information Servs., Inc. v. Kitchens,* 210 F.R.D. 562, 566 (W.D.N.C.2002) (citing *Dreyer v. GACS, Inc.,* 204 F.R.D. 120, 122 (N.D.Ind.2001) (noting that "[m]ost courts hold that a subpoena seeking documents from a third-party under Rule 45(a)(1)(C) is a discovery device and therefore subject to a scheduling order's general discovery deadlines"); *Integra Lifesciences I, Ltd. v. Merck,* 190 F.R.D. 556, 561 (S.D.Cal.1999) (observing that "[c]ase law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case"); *Marvin Lumber and Cedar Co. v. PPG Indus., Inc.,* 177 F.R.D. 443, 443–44 (D.Minn.1997) (holding that subpoenas duces tecum meet the definition of discovery contained in Rule 26(a)(5), and that they are therefore "subject to the same time constraints that apply to all of the other methods of formal discovery"); *Rice v. United States,* 164 F.R.D. 556, 557 (N.D.Okla.1995) ("Rule 45 subpoenas duces tecum ... constitute discovery."); 7 Moore's Federal Practice § 34.03[2][a] (stating that, "[a]lthough Rule 45 is not limited by its terms to nonparties, it should not be used to obtain pretrial production of documents or things, or inspection of premises, from a party in circumvention of discovery rules or orders")); *Dees v. Hyundai Motor Mfg. Ala., LLC,* No. 2:07–CV–306–MHT, 2008 WL 821061, at *1 (M.D.Ala. Mar. 25, 2008); *Pushko v. Klebener,* No. 3:05–cv–211–J–25HTS, 2007 WL 2671263, at *3 (M.D.Fla. Sept. 7, 2007).

other discovery rules.  *Commissariat A L'Energie Atomique v. Samsung Electronics Co.*, No. 8:06MC44T30TBM, 2006 WL 5003562, at *2 (M.D. Fla. June 14, 2006); *See also* FED.R.CIV.P. 45 Advisory Committee Notes to the 1970 Amendments ("The changes make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); FED.R.CIV.P. 45 Advisory Committee Notes to the 1991 Amendments ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34"); 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed.1995) (scope of discovery through a subpoena is "exceedingly broad" and incorporates the provisions of Rule 26(b) and Rule 34).  "While the scope of the subpoena for production is the same as Rule 34, the purposes for Rule 45 differ from those of Rule 34."  *Hatcher v. Precoat Metals*, 271 F.R.D. 674, 675 (N.D. Ala. 2010).

There is nothing that leads this Court to believe that the subpoena issued by the McDonalds is exempt from the discovery deadline absent the limited purposes allowed under the rules.  "Rule 45 subpoenas may be employed in advance of trial and outside of a discovery deadline for the limited purposes of memory refreshment, trial preparation, or to secure for the use at trial original documents previously disclosed by discovery."  *Circle Grp., L.L.C.*, 836 F. Supp. 2d 1327, 1352.  The Court finds that the McDonalds' subpoena, issued after the discovery deadline, is not seeking documents for memory refreshment or trial preparation, and does not seek an original copy of a document that was already produced in discovery.  Nor have the McDonalds made a good cause showing that they

were unaware of the information until after the expiration of the discovery deadline. Accordingly, the Court finds that the McDonalds' subpoena constitutes an untimely discovery request, and it is due to be quashed.

### C. Defendants Motion to Compel

On September 3, 2014, Cotton States filed *Motion to Compel* (Doc. 34) requesting this Court to compel the McDonalds to provide complete responses to several interrogatories and requests for production. The discovery deadline ran on August 22, 2014, thus making Cotton States motion untimely. *See* Docs. 29, 34. When questioned as to why the motion was filed past the discovery deadline, Cotton States argues that the motion is not untimely because the discovery requests were timely propounded and the deadline for the responses was prior to the discovery deadline.

However, that position is incorrect. Not only do discovery requests have to be served at least thirty days prior to the discovery deadline, but the *Guidelines to Civil Discovery Practice in the Middle District of Alabama* explicitly states that all discovery motions must be filed ten days prior to the discovery deadline, or the party must request leave of court to file the motion out of time. *See* Guideline 1, "Discovery in General," § I. "Timeliness of Motions to Compel." Cotton States does not offer any reason as to why the motion is untimely and leave of court was not sought other than their incorrect assertion that the motion is timely because they propounded the discovery requests prior to the expiration of the deadline. Additionally, only five days after filing the untimely motion to compel, Cotton States filed the motion to quash, discussed in more detail above, asserting

that the McDonalds "expressly disregarded the discovery deadlines in this matter by issuing the Subpoena after the deadline and without seeking leave of the Court." *See* Doc. 40 at 4.  Cotton States attempts to hold opposing counsel to a strict discovery deadline, while expecting this Court to hear their motion outside of the discovery deadline.   In sum, no ground has been offered that warrants consideration of the untimely motion to compel.

## II.  CONCLUSION

Accordingly, it is ORDERED as follows:

1)   Plaintiffs' *Motion to Compel* (Doc. 30) be and is hereby GRANTED in part, and DENIED in part as further set out above;

2)   Defendant's *Motion to Quash* (Doc. 40) be and is hereby GRANTED;

3)   Defendant's *Motion to Compel* (Doc. 34) be and is hereby DENIED as untimely; and

4)   Plaintiffs' *Motion to Continue Deadlines* (Doc. 45) be and is hereby DENIED as moot.

DONE this 13th day of March, 2015.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE